McCARTY & WATSON, *defendant's attorneys.*
JOB PIERSON, *plaintiff's counsel.*
S. D. PIERSON, *plaintiff's attorney.*

BRONSON, Chief Justice, struck out,

| | |
|---|---:|
| Proof of service of rule to plead, - - - - | $0 50 |
| do do final order for bill of particulars, - - | 50 |
| Notice of motion to refer at circuit, and proof of service (not done), - - - - - - | 75 |
| Attorney and counsel fee on motion to refer at circuit, not chargeable (5 *Hill*, 556), - - - | 3 00 |
| Proof of service of bill of particulars, - - - | 50 |
| do do notice of hearing for referee and party 4s and 4s, - - - - - - | 1 00 |
| Two copies subpœna, - - - - - | 50 |
| Proof of service of costs for taxation, - - | 50 |
| Copy costs, charged before, or twice, - | 50 |
| [*214] *Proof of service of do, - - - - | 50 |
| Travel fee of Gilbert (6 *Wend.* 548), - | 12 00 |
| | $20 25 |
| Deduct for mistake of taxing officer against the plaintiff, - - - - - - - | 3 16 |
| | $17 09 |

The affidavit as to the other witnesses was insufficient, but the question was not raised before the taxing officer, which the defendant makes here.

*Ordered,* That $17.09 be deducted from the bill of costs as taxed on the 13th of June last, and be allowed to the defend-ant on the judgment and execution.

---

JOHN TAYLOR *et al.* agt. PHILEMON H. FROST and JAMES S. DICKERSON.

A new trial may be granted on the ground of *surprise,* where the plaintiff is non-suited, not upon the principal question involved in the controversy, but for the failure to establish a subordinate fact, about the existence of which there is no

doubt; the plaintiff having exercised due diligence in preparing the cause for trial, and had reason to believe that the evidence which he could produce would fully establish such subordinate fact, but which unexpectedly failed him on the trial.

Although new trials are not often granted upon the ground of *surprise*, yet there may be cases which call for relief in that form.

Such motions are proper to be heard at special terms.

*September Term*, 1846.

MOTION by plaintiffs for a new trial, on the ground of surprise.

This suit was instituted for the recovery of the damages to the plaintiffs, by reason of an attachment as against non-resident debtors, claimed by them to have been issued illegally by the defendants Frost and Dickerson, and levied upon plaintiffs' goods; subsequently, Grosvenor & Starr (who were also originally sued with Frost & Dickerson), filed a claim under the attachment. The declaration contained three counts. 1st. Trespass on the case, that plaintiffs were entitled to possession of divers goods and chattels of great value, to wit: $20,000; which goods and chattels in the warehouse of Russell & Hawes in the city of Buffalo, Erie county, said defendants, to wit: on March 1st, 1841, wrongfully and unjustly seized and converted, and absolutely disposed of, to their own use. 2d. Trespass on the case, same as first count in all particulars, except alleged plaintiffs were " owners and proprietors " of the goods and chattels. 3d. Trover, that plaintiffs possessed, as of their own property, certain goods and chattels, to wit (specifying them) : of the value of $20,000 ; on March 1st, 1841, casually *lost the same, and the     [*215] same came into defendants' hands and possession by finding. Yet, &c. hath not (&c.) delivered the same ; but afterwards, to wit: on March 1st, 1841, converted same to their own use, &c. Defendants Frost and Dickerson pleaded general issue, and *nolle prosequi* was entered against defendants Grosvenor & Starr. The trial of the issue thus joined was had on the 18th and 19th days of June, 1846, at the Erie circuit, before Hon. N. DAYTON, circuit judge. The plaintsiff appeared by Le Grand and George L. Marvin, their counsel ;

and defendants Frost and Dickerson appeared by George P. Barker and Seth E. Sill, their counsel, on which trial was had, and testified as follows: *Dyer Tillinghast* testified he was supreme court commissioner during A. D., 1838, in the city of Buffalo: he knew not, personally, either party to this suit. (A petition and four affidavits were shown witness, in the words and figures as follows:)

"Messrs. Taylor, Moore & McGriff,

"To Frost & Dickerson, Dr.

"To amount of note dated August 13th, at eight
months, due 13th and 16th April, 1838, .     .     $540.50

" City and county of New-York, ss.: David Stoutenburgh, of the said city and county, being duly affirmed, doth depose and say, that Messrs. Taylor, Moore & McGriff, of the state of Indiana, are indebted to Messrs. Frost & Dickerson, of the city of New-York, for goods sold to the amount of five hundred and forty dollars and fifty cents, as charged in the above bill; for which the said Frost & Dickerson hold the promissory note of the said Taylor, Moore & McGriff, dated and payable as mentioned in said bill. That said note is at present not in their immediate possession, having been sent to Mr. W. H. Lowerre, of Pittsburgh, for the purposes of collection, as this deponent believes. That the deponent has been, from the giving of said note to the present time, the clerk and bookkeeper of the said Frost & Dickerson; and that no part of said note has ever been paid, to his knowledge or belief.

(Signed),          " D. STOUTENBURGH.

" Affirmed before me this 24th of August, 1838,

" H. HUTCHINSON, *Com'r of Deeds.*"

" City and county of New-York, ss.: David Stoutenburgh, of the said city and county, being duly affirmed, doth depose and say that the persons composing the mercantile firm of Taylor, Moore & McGriff, in relation to whose account with Messrs. Frost & Dickerson this deponent lately made an affidavit before H. Hutchinson, commissioner of deeds, are un-

Taylor agt. Frost.

derstood *and reputed to be residents of the state of   [*216]
Indiana, and not of the state of New-York; and
the deponent doth verily believe them to be residents of the
state of Indiana, and not of the state of New-York.

"D. STOUTENBURGH.

" Affirmed before me this 30th of August, 1838,
   " H. HUTCHINSON, *Com'r of Deeds.*"

" To Dyer Tillinghast, Esq., supreme court commissioner.
The petition of Philemon H. Frost and James S. Dickerson,
of the city of New-York, respectfully showeth that your pe-
titioners are creditors of Taylor, Moore & McGriff, and jointly
as copartners under said name and style, and have a demand
against them all personally, arising upon contract within this
state, amounting to one hundred dollars and upwards; and
that the said Taylor, Moore & McGriff, whose given names
your petitioners do not know, except that said Taylor's
name is John Taylor, are indebted to your petitioners in the
sum of five hundred and fifty-four dollars and sixty-eight
cents, over and above all discounts, as appears by the affi-
davit of your petitioners, hereto annexed; and that the said
John Taylor, Moore & McGriff are not, nor are either of
them, residents of this state, but reside at Lafayette, in the
state of Indiana, or elsewhere out of the state of New-York,
as will also appear by the affidavit of David Stoutenburgh,
and hereunto annexed. Your petitioners, therefore, pray that
your Honor will, in pursuance of the statute in such case
made and provided, issue your warrant to the sheriff of the
county of Erie, thereby commanding him to attach and safely
keep all the estate, real and personal, of the said Taylor,
Moore & McGriff, within his county, except such articles as
are by law exempt from execution, with all books of ac-
counts, vouchers and papers relating thereto. Petitioner
further says their copartnership name and style is Frost &
Dickerson. And your petitioner will ever pray, &c.

" FROST & DICKERSON,
   "By S. G. HAVEN, their attorney."

" State of New-York, county of Erie, ss.:   Solomon G.
Haven, being duly sworn, doth depose and say that he is the
attorney of Frost & Dickerson, the petitioners above named;
that said Frost and Dickerson have a demand against Taylor,
Moore & McGriff, personally arising on contract within this
state, amounting to one hundred dollars and upwards; and
that the said Taylor, Moore & McGriff are indebted to said
Frost & Dickerson in the sum of five hundred and fifty-four
dollars and sixty-eight cents, over and above all discounts.
          And this deponent further says that the said
[*217]   *Taylor, Moore & McGriff are not, nor are either of
          them residents of this state, but reside at Lafayette, or
elsewhere out of the state of New-York, as deponent has been
informed and verily believes to be true.
                                        " S. G. HAVEN.

" Subscribed and sworn before me this 3d day of Septem-
ber, 1838.                     .
              " N. K. HALL,  Com'r of Deeds of Erie county."

" State of New-York, county of Erie, ss.:  Alexander Mac-
kenzie Ross, of Buffalo, being duly sworn, doth depose and say,
that Taylor, Moore & McGriff, the debtors in the annexed
petition of Frost & Dickerson named, reside at Lafayette, in
Indiana, or elsewhere out of the state of New-York, as this
deponent is informed and verily believes to be true.
                                        " A. MACKENZIE ROSS.
" Subscribed and sworn before me this 3d day of Septem-
ber, 1838,
              " N. K. HALL,  Com'r of Deeds for Erie county."    .

These affidavits and petition were presented to me, as such
commissioner, on September 3d, 1838, and on them the same
day I issued a warrant, also an order of publication, in the
words and figures as follows :

" By order of Dyer Tillinghast, Esq., supreme court com-
missioner, &c. ; to the sheriff of the county of Erie, greeting :
whereas Philemon H. Frost and James S. Dickerson have this

day made application, in writing, to me for an attachment against John Taylor, Moore & McGriff, the first names of said Moore & McGriff not being known to said applicants; which said Taylor, Moore & McGriff are non-resident debtors, praying for such attachment, and setting forth that the said Frost & Dickerson are creditors of the said Taylor, Moore & McGriff, and have a demand against the said Taylor, Moore & McGriff, personally arising on contract within this state, amounting to one hundred dollars and upwards, and that the said Taylor, Moore & McGriff are justly indebted to the said Frost & Dickerson in the sum of five hundred and fifty-four dollars and sixty-eight cents, over and above all discounts, and that the said Taylor, Moore & McGriff are non-residents of this state, but reside at Lafayette, in the state of Indiana, or elsewhere out of the state of New-York; which said application is verified by the affidavits of the said Frost & Dickerson's attorney, Solomon G. Haven, and the facts and circumstances to establish the grounds on which the said application is made being also verified by the affidavits of David Stoutenburgh and two disinterested witnesses, and such proof being made to my satisfaction, I do therefore, by virtue of the power and the authority to me given in and by the statute concerning
*'attachments against absconding, concealed, and [*218] non-resident debtors,' command you the said sheriff
to attach and safely keep all the estate, real and personal, of the said Taylor, Moore & McGriff, within your county (except such articles as are by law exempt from execution), with all books of account, vouchers, and papers relating thereto. And further, that you immediately, on making such seizure, with the assistance of two disinterested freeholders, make a just and true inventory of all the property so seized, and of the books, vouchers, and papers taken in your custody, stating therein the estimated value of the several articles of personal property, and enumerating such of them as are perishable; which inventory, after being signed by you the said sheriff, and the said appraisers, shall, within ten days after such seizure, be by you returned to me at my office in Buffalo, in the said county,

and hereof fail not.  Given under my hand and seal at Buf-
falo, this third day of September, 1838.

" D. TILLINGHAST,

"*Supreme Court Commissioner.*"  [L. S.]

" Let notice be published in the state paper, and in the
· newspaper printed in the city of New-York, to wit: in the
paper called the New-York American, and in a newspaper
printed in the county of Erie, once in each week for nine
months, that an attachment has issued against the estate of
Taylor, Moore & McGriff, non-resident debtors, on due proof
made to me pursuant to the directions of the statute concern-
ing ' attachment against absconding, concealed, and non-resi-
dent debtors,' and that the same will be sold for the payment
of their debts, unless they appear and discharge such attach-
ment according to law, within nine months from the first pub-
lication of the said notice, and that the payment of any debts
due to them by residents of this state, and the delivery to them,
or for the use of any property within this state belonging to
them, and the transfer of any such property to them, as for-
bidden by law and are void.  Given under my hand at Buf-
falo, this 3d day of September, 1838.

" D. TILLINGHAST,

" *Supreme Court Commissioner.*"

The handwriting of the two affidavits of Stoutenburgh I
do not know ; the handwriting in the petition and affidavit
signed by Haven, and in the body of the affidavit of Ross,
and of the above warrant and order, are the handwriting of
Solomon G. Haven ;  I think I delivered the warrant to Haven,
but do not distinctly recollect.  The return of the sheriff to
that warrant, and the inventory and appraisal therewith in the
words and figures as follows :

" State of New-York, Erie county.   The follow-
ing is an inventory of *all the property seized and
taken into custody of the undersigned sheriff of said
county, by virtue of a warrant or attachment, a copy of which

Taylor agt. Frost.

this paper and said inventory is annexed, it was immediately after the said seizure by the undersigned sheriff, with the assistance of the undersigned John W. Stewart and Stephen V. R. Graves, two disinterested freeholders.

| | | | | | | |
|---|---|---|---|---|---|---|
| " 5 | boxes of shoes, | . | . | . | . | $125 00 |
| 2 | half chests of tea, | . | . | . | . | 48 00 |
| 1 | case of goods, | . | . | . | . | 25 00 |
| 3 | trunks of goods, | . | . | . | . | 150 00 |
| 1 | dry keg, | . | . | . | . | 3 00 |
| 12 | bags of coffee, | . | . | . | . | 220 00 |
| 1 | bag of specie, | . | . | . | . | 7 00 |
| 2 | boxes of goods, | . | . | . | . | 600 00 |
| 1 | box of starch, | . | . | . | . | 3 00 |
| | | | | | | $1181 00 |

" All of which we appraise and value at the sum of eleven hundred and eighty-one dollars.

"CHARLES PERSONS, *Sheriff*,
    "By L. BROWN, *Under Sheriff.*
    "J. W. STEWART, ⎫
    "S. V. R. GRAVES, ⎭ *Appraisers.*

" Filed Oct. 6th, 1838."

was the return of the sheriff, and by the under sheriff therein named, and filed by me October 6th, 1838.   The petition and affidavit in the words and figures as follows:

" In the matter of Taylor, Moore ⎫ . Petition to be deemed
& McGriff, non-resident debtors. ⎭ an attaching creditor.

City and county of New-York, ss.   Seth Grosvenor, of the said city, and one of the firm of Seth Grosvenor & Co. of said city, being duly sworn, says, that Taylor, Moore & McGriff, above named, who are residents of the state of Indiana, are justly indebted unto him, the said Seth Grosvenor, and Henry B. Starr, partners of the firm of Seth Grosvenor & Co., in the sum of six hundred and fifty-five dollars and eight cents, over, and due on the 18th day of August last past, all discounts;

which sum is now due, and arose upon a contract made in the said city and state of New-York.

"S. GROSVENOR.

"Subscribed and sworn this 21st day of September, 1838, before me,

"WM. H. MAXWELL, *Commissioner of Deeds.*"

"To Dyer Tillinghast, Esq., supreme court commissioner in the county of Erie, and state of New-York. The [*220] petition of Seth Grosvenor and *Henry B. Starr, merchants of the city of New-York, humbly showeth, that whereas a warrant of attachment has lately been issued by you against the real and personal property of Taylor, Moore & McGriff, of the state of Indiana, non-resident debtors; and whereas the said debtors are justly indebted unto your petitioners in the sum of money specified in the affidavit hereunto annexed. Your petitioners, therefore, pray that they may be deemed attaching creditors. Dated 21st day of September, 1838.

"S. GROSVENOR.
"HENRY B. STARR.

"S. G. HAVEN, *Attorney.*"

were presented to and filed by me, September 25th, 1838. No other proceedings, in said attachment against John Taylor, Moore & McGriff, were ever had before me. No trustees were ever appointed by me. No report of any kind was ever made in said attachment. I was such commissioner till in May, 1840.

*Lorenzo Brown* testified: I was under sheriff of Charles P. Persons, sheriff of Erie county, during 1838; do not know either of the parties to this suit; the above warrant of attachment I received September 3d, 1838, and made return with the inventory; I found the goods mentioned in the inventory in Russell and Hawes' warehouse on Buffalo Creek, in Buffalo city; I do not recollect from whom I received the warrant; it was handed to me as an officer to execute; I attached goods as the goods of Taylor, Moore & McGriff; Stewart and Graves,

then deputy sheriffs of the said sheriff, were the appraisers, and they subscribed the inventory; no one, to my knowledge, called upon me to settle that attachment.

*Cross-examined.* I cannot tell who gave me the warrant; I think some one handed it to me; I never knew an attachment left without directions where to find the goods.

*John W. Stewart* testified: During 1838 I was deputy sheriff of Charles P. Persons, then sheriff of Erie county; I recollect of goods being seized on attachment, as against non-resident debtors, that year, in Russell & Hawes' warehouse, by then under sheriff Brown; also by me, at same time and place, on other attachments. My name on the above inventory and appraisal is my signature; I think we did not open the boxes; I had, at same time, an attachment against one Winton; the two attachments I had were paid; I received the pay from Russell & Hawes; Frederick G. Stanley, an attorney, then of Buffalo, now dead, had charge of these two attachments; I do not recollect the marks on the boxes, &c., above mentioned.

*James A. Sherwood* testified: I had a subpœna against David A. Eddy *to serve on him—did not   [*221] find him. I ascertained he was in the state of Ohio.

*Cross-examined.* I am not a clerk in Mr. Marvin's office; do writing there occasionally. To serve subpœna I went not out of this city, only to Mr. Hawes's; I went on Saturday, and again on Monday last to Mr. Hawes's store, also to Mr. Stewart's.

*Samuel Hawes* testified: During 1838 I was one of the firm of Russell & Hawes, engaged in transportation on the Erie canal. I do not recollect of any goods being attached in fore part of September, 1838, at our warehouse. Mr. Russell attended to our transportation business; Mr. Russell died a year or two ago; David A. Eddy was in 1838 one of our clerks; he is in Ohio I suppose; about a week since I received a letter from him, in his handwriting, postmarked in Ohio; he was engaged in business with me, and slept in my store when home.

*Cross-examined.* I last saw Eddy at my store in Main

street in this city, know his handwriting, and believe the letter, dated and postmarked in Ohio, his handwriting. His business in the summer for several years has been in Ohio.

*Seth Grosvenor* testified : I reside in New-York city; am acquainted with defendants; the firm of Frost & Dickerson in the city of New-York consisted of Philemon H. Frost & Dickerson, I do not recollect Dickerson's given name.

*Cross-examined.* I was originally one of the defendants in this cause. There was not a dollar of indebtedness of the plaintiffs to me, or my partner Starr, at the time of entering the *nolle prosequi* in this suit. It was a condition of our settling with the plaintiffs, that the suit should be discharged.

*Re-direct.* I had no personal communication with plaintiffs or either of them, oral or written, since this suit was instituted. Just before the entering of the *nolle prosequi*, myself and partner signed an agreement we would not plead the statute of limitations in any future suit against us for the same cause of action, if commenced within some specified time.

*Re-cross-examined.* In settling our claim against plaintiffs, I communicated only with my attorney; I received securities for our claim on plaintiffs; I wrote a second time to my attorney to take the securities of the plaintiffs, whether they discontinued this suit or not, and before the claim was settled, and do not know in fact the condition of the settlement.

*Thomas M. Foote* testified : During 1838 I was [*222] one of the publishers *of the Commercial Advertiser, a daily newspaper then published in the city of Buffalo. In our Commercial Advertiser of September 3, 1838, was that day published and circulated a notice of attachment, in words and figures as follows :

" By order of Dyer Tillinghast, Esq., supreme court commissioner for Erie county. Notice is hereby given, pursuant to the provisions of the statute authorizing attachments against absconding, concealed, or non-residing debtors, that an attachment has issued against the estate of Taylor, Moore & McGriff, who are not inhabitants of this state, but are non

resident debtors, residing in the state of Indiana, and that the same will be sold for the payment of their debts, unless they appear and discharge such attachment according to law, within nine months from the first publication of this notice; and that the payment of any debts, and the delivery of any property belonging to such debtors to them or to their use, and the transfer of any property by them for any purpose, whatever, are forbidden by law and are void. Dated the 3d day of September, 1838.

" S. G. HAVEN,

"*Attorney for Attaching Creditors.*"

Our newspaper was then taken by Russell & Hawes, I think.

*Nathan K. Hall* testified: During 1838 was an attorney and counselor in this court, of the firm of Fillmore, Hall & Haven; Fillmore was absent in September, 1838; Haven did the general correspondence, attended generally to the law business, and I to the chancery business; I do not recollect to have written defendants; I may have written to Grosvenor & Starr touching their claim. Their petition and affidavits in the attachment are in my handwriting; the defendants' papers on the attachment I have no recollection to have seen—I must have signed my name and taken the oaths to the same as commissioner of deeds; I was commissioner of deeds for Erie county that year.

*Jason Sexton* testified: During 1838 I was in the grocery business, and was acquainted with weights of bags of coffee that year. There are various classes as to size of bags of coffee; the larger class never varies more than from 150 pounds to 165 pounds, usually about 160 pounds.

*Solomon G. Haven* testified: During 1838 I was an attorney and counselor in this court, of the firm of Fillmore, Hall & Haven. The writing in the filling up of the petition of defendants, and in the two affidavits signed by me and Ross, also in the filling up of the warrant of attachment, and in the order of publication, are in my handwriting, and the subscrip-

tion of defendant's name by me as attorney to the [*223] petition, and of my *name to the affidavit by me, are in my handwriting. The two affidavits signed David Stoutenburgh were received by Fillmore, Hall & Haven through the mail. I can only say I have no recollection of the papers; I think it probable I did whatever was done with the papers; the law business of the firm of Fillmore, Hall & Haven was then done usually in my name as attorney. Hall of that firm was then commissioner of deeds, and took the affidavit to which his name appears as commissioner; I am not acquainted with either of the parties to this suit; do not know that I ever personally saw any of them until this court; I was introduced to the gentleman now sitting by Mr. Barker, now acting as defendant's counsel, as Mr. Frost, one of the defendants. I acted for the firm of Fillmore, Hall & Haven; I assumed to act as the papers state; I can't tell from any recollection of where the goods were when attached; am not aware I ever saw them; I recollect of the attachment being published in the Argus and New York American.

*Question.* Who was or were your client or clients when you instituted the attachment proceedings in 1838?

*Answer.* I assumed to act as attorney of defendants, and was and am myself responsible to $5,000 and upwards, and am individually able to pay any and all claims that can be legally established against me; I acted under and in pursuance of letters received by our firm, and which as well as other letters touching the attachment and the foundation thereof I have brought, in compliance with the plaintiffs' *subpœna duces tecum*, and hold in my hand (witness exhibits a parcel of papers one and a half to three inches thick), and which I will produce if the court so orders, not without.

*Question.* By whom do these letters, under which you assumed to act as such attorney in issuing such attachment, purport to be signed?

Defendants object to the question; judge overrules the objection; witness answers. We have quite a number of letters

from defendants, but I have no letters from defendants which solely retain said Fillmore, Hall and Haven. Defendants renew their objection to the question. Judge decides that witness need not speak in regard to any letter or communication which contains other than a mere retainer. Plaintiffs excepted to the decision of the judge; plaintiffs ask the witness to produce to the circuit judge, for his private inspection, the letters so received by his law firm Fillmore, Hall & Haven, retaining them in the attachment proceedings; and the judge direct the witness how much thereof to read. Defendants object to the question; judge decides to sustain the objection; plaintiffs *except to the decision. Plaintiffs ask the [*224] witness to produce the letters so retaining his law firm to institute the attachment proceedings, and allow no part thereof to be seen, except the signatures thereto, so that the same may, by a person acquainted with defendants' signature, be proven, and if proven to be the defendants', that this witness communicate only so much, and such parts thereof as retains the witness's law firm to institute the attachment? Defendants object to each and every part of the question; the circuit judge decides to sustain the entire of said objections; plaintiffs except to the decision. Plaintiffs request the witness of the letters to his firm, in relation to the attachment proceedings, to cover up with some opaque substance, or to obliterate all those parts containing communications other than retainer and directions as to the same, and then to produce the letters to prove the signatures thereto, and if proved to be the defendants' signatures, to read the same. Defendants object to the question or proposition, and each and every part thereof. Judge decides to sustain the objection; plaintiffs except to this decision. Witness says, I wrote to defendants in September, 1838, and letters I hold in my hand were received in reply. I did not, I think, write to defendants in August, 1838, but I did in September, 1838, correspond with them; my letters to defendants were superscribed Frost & Dickerson, New-York city, and the letters I hold purport to be answers to them. Witness is asked to read over the memo

Taylor agt. Frost.

randum or description of a note at the top or beginning of one
of the affidavits of David Stoutenburgh, and says, Fillmore,
Hall & Haven had a note of the description of the one de-
scribed in Stoutenburgh's affidavit; it came to their hands
after the attachment was issued from New-York or Pittsburgh,
don't remember which; I have had claims sent to me by de-
fendants, other than the one about which inquiry is made: I
have no knowledge nor recollection of any trustees being ap-
pointed in the attachment proceedings.

*A. Mackenzie Ross* testified: I know neither of the parties
to this suit; I signed and swore to the affidavit in the attach-
ment proceedings purporting to be signed by me.

*Thomas I. Agnew* testified: I reside in New-York city. In
'38 I was in the employ of Townsend & Brothers in New-York
city. During '36 and '37, I was in the employ of Philemon
H. Frost & James S. Dickerson, knew both of them; they,
during those years, and in 1838, and for several years before
and after that year, constituted the firm of Frost & Dickerson.
The correspondence of that firm was done chiefly by defend-
ant Frost; I left them at commencement of 1838; I
[*225]   have seen them write and know their *handwriting;

I was and am well acquainted with David Stouten-
burgh and his handwriting, and have seen him write; he was,
during 1838, and for several years before, and after that year
the book-keeper and general plenary agent of defendants.
The signatures, David Stoutenburgh, to the two affidavits
above referred to, are I believe in his (David Stoutenburgh's)
handwriting. A letter in words and figures as follows:

" *New-York, April* 13, 1839.

" GENT—We have instructed our lawyers at Buffalo to
remit to you Taylor, Moore & McGriff's note for five hundred.
and forty dollars and fifty cents, due April 13th and 16th,
1838, protest and postage to be added is three dollars and
seventy-five cents; we attached their goods at Buffalo last
September on the said note; the marshal let them remain in
a commission warehouse; the said warehouse, with the goods

---

*Taylor agt. Frost.*

---

(attached), of Taylor, Moore & McGriff, was all consumed by fire last February (there was no insurance on them). Our object in having the note sent to you is, for the purpose of instituting suit if you think it advisable; we do not think that they can raise a legal offset in consequence of the loss of the said goods by fire in Buffalo. If you think they can, do not institute suit; it is somewhat doubtful whether the note reaches you ten days before the sitting of your county court. We, however, conclude that it will make no difference, as we have given you the amount of said note when due, and the note is payable to Frost & Dickerson; their names are Philemon H. Frost and James S. Dickerson; the note will reach you, beyond all doubt, by the 25th or 28th inst.

" Respectfully yours,

" FROST & DICKERSON.

"Messrs. White & Lockwood, Lafayette, Indiana."

and its superscription in the words and figures as follows:

" WHITE & LOCKWOOD. " 25."

"*New-York, April* 13. Lafayette, Indiana."

is here shown witness by plaintiffs, and he says: the signature to that letter is in the handwriting of defendant Frost; the defendants were active men in their business, and both of them knew what was going on in their store. The last above letter is now offered in evidence; defendants object to the same, on the ground that White & Lockwood were of the profession of attorneys, and that it was directed to them by defendants as their attorneys, and defendants produce and show the circuit judge what they claim as a reply thereto, purporting to be signed " White & Lockwood," and call

*Theodore M. Parmelee*, who testifies: I know White, formerly a member *of the House of Representa- [*226] tives, and senator in Congress; have seen him write, and know his handwriting; the signatures " White & Lockwood" to the letter is in his handwriting. He was reputed to be a lawyer from Indiana; I think his name is Albert.

*Cross-examined.* I don't know of White being a merchant

VOL. II. 19

in Lafayette, Indiana; I never knew him in Indiana; do not know Lockwood; all I know of White is as a member of Congress in Washington, District of Columbia. Defendants call

*Lucius F. Tiffany*, who testifies: I was at Lafayette, Indiana, last year, in the spring; there became acquainted with Albert White; had business with him as a lawyer, and he was reputed to be a lawyer. He was acting as a lawyer for me; I there saw a lawyer by the name of Lockwood; he was the lawyer of the party adverse to us in a suit.

*Cross-examined.* I was never in the state of Indiana but once, and that in the spring of last year, and had no knowledge of White or of Lockwood prior to that time; said White & Lockwood were not then in copartnership. I knew not of any mercantile firm in Lafayette by the name of White & Lockwood, and do not know but there might have been such mercantile firm in Lafayette. The letter purporting to be from White & Lockwood to defendants, in reply, is denied by the court to be seen by other than the circuit judge, and defendants cease further proof of same. Plaintiffs now offer to read the said letter from defendants to White & Lockwood. Defendants object to the reading of the same. Judge decides to sustain the objection. Plaintiffs except to this decision. Plaintiffs offer to read only so much of this last letter as indicates defendants' direction to their attorneys in Buffalo to forward the note. Defendants object to reading the same. Judge decides to sustain the objection. Plaintiffs except to this decision.

Plaintiffs now produce testimony taken on commission, and *de bene esse*, to prove plaintiffs' damages by reason of the attachment. Defendants object to reading the same, for the reason solely that defendants have not been connected with the attachment. Plaintiffs contend, for sundry reasons, that the defendants are liable. 1st. That the law firm of Fillmore, Hall & Haven, in the name of one of that firm, did act as attorneys for defendants, the attaching creditors in the attachment, and the said law firm being proven responsible for any claim against them, the

defendants are bound by the acts of said law firm, and must look for their damages to said law firm, if their acts were unauthorized by defendants.   2d. That the very fact of Mr. Frost, one of the defendants in court and on this trial, *sitting by his counsel, and through that counsel ob-   [*227] jecting to the reading of so much of defendants' letters as retains Fillmore, Hall & Haven in the attachment; also the facts of the affidavits of Stoutenburgh, used in the attachment, being received by Fillmore, Hall & Haven, in a letter from defendants directing the attachment; also the fact Fillmore, Hall & Haven were at the same time with the issuing of the warrant of attachment in correspondence with defendants as attorneys for them in other matters, as well writing as receiving letters; also the fact that Stoutenburgh, whose affidavits were so received, was proven to be at that time bookkeeper and clerk, and general agent for defendants, indicated sufficient to go to the jury upon the question whether Fillmore, Hall & Haven were not attorneys for the defendants, attaching creditors in attachment, and further that attorneys were recognized both by statute and this court, in proceedings against non-resident debtors, &c., and that defendants could not deny the relation of attorney and client, but must take their remedy against the attorney who assumed to act, if he acted without authority or improperly, the said attorney being shown to be abundantly responsible, and it not being pretended that he acted through collusion with plaintiffs, and then plaintiffs offered to read said testimony on commission, and *de bene esse*, to show the damages, and then go to the jury. Defendants again objected to proceedings farther in the trial to prove damages by the attachment, inasmuch as defendants were not liable for the acts of Fillmore, Hall & Haven, or either of them, as attorneys for defendants as attaching creditors in the attachment.   The circuit judge decided to sustain this objection; plaintiffs excepted to this decision; plaintiffs then asked to withdraw one of the jurors, by reason of the decision of the judge having decided sufficient was shown to make probable White & Lockwood were attorneys, so that he

ruled out the above letter of defendants to White & Lock wood, and further offered to show by affidavit, 1st. That there was no address about the letter indicating White & Lockwood were attorneys, or other than merchants, prudent correspondents of defendants in Lafayette, Indiana. 2d. That in introducing said letter, it was not known, intimated to, or suspected by said plaintiffs' attorney or their counsel, that said White & Lockwood were attorneys. The judge remarked he would grant the application to withdraw one of a jury, but for making a precedent which might hereafter be rendered inconvenient; and the circuit judge decided to grant a nonsuit, to which decision plaintiffs excepted, and thereupon the judge granted permission to make a case, with privilege to use the same also as a bill of exceptions.

[*228]      *George L. Marvin, attorney for plaintiffs, stated in his affidavit that all the testimony and statements of proceedings on the trial were truly and correctly set forth above, and that a deposition, signed and sworn to by Solomon G. Haven (one of the witnesses sworn on the trial), the 5th day of January, 1842 (in which deposition Haven swore he was attorney for Frost and Dickerson; in procuring the attachment mentioned in the foregoing testimony of Dyer Tillinghast, and stated substantially the same as given in his testimony above), was shown to Haven on the trial, and he testified that the deposition was made by him as it purported to have been. Marvin stated that he was surprised on the trial, in not being able to bring home, by the testimony of Haven, to defendants, positive knowledge and absolute direction of the attachment proceedings, and also at the attempt to prove Messrs. White & Lockwood (to whom the letter above copied was directed) were attorneys.

Le Grand Marvin, law partner of plaintiff's attorney, and counsel for plaintiffs, stated in his affidavit that he prepared the cause for trial at the last June circuit. In May last he made sundry inquiries of David Stoutenburgh, of New-York city, as to the knowledge of the defendants Frost & Dickerson, or either of them, of the attachment; to which inquiries

Stoutenburgh refused to reply at that time. A day or two subsequently, Marvin again repeated his inquiries of Stoutenburgh, and to which no reply was received, but a refusal to converse on the subject. Marvin then informed him he should send a subpœna for him to attend as a witness at Buffalo, which he did on the 5th of June, but Stoutenburgh had then left for Ohio. Marvin then inquired of Haven, by what authority he instituted the attachment proceedings, and to be shown the same if in writing. Haven replied he had abundance of authority, signed by the defendants, as he supposed, but he did not know the defendants' handwriting, that he would have that authority present at the circuit, as he was required by his *subpœna duces tecum*, and there would be no doubt of the authority being sufficient; but Haven absolutely refused to let Marvin see the paper or writing containing such authority, or to inform him in what form or character such authority was. On the 10th of June, 1846, Marvin sent a subpœna to New-York to have it served on some person that knew the handwriting of both defendants. On 16th of June, the subpœna was returned with proof of service on Thomas I. Agnew, of the city of New-York, who was present on the trial as a witness. The original letter, from the defendants Frost and Dickerson to White & Lockwood, had no indication of White & Lockwood being attorneys, nor did Marvin suppose them *or either of them to be attorneys, but believed [*229] that the letter was to a commercial firm in which the defendants had friendly confidence, it being addressed on the outside, Messrs. White & Lockwood. Marvin stated that he did not expect the letter would be of any use to him on the trial, until June 10, 1846, when he found Stoutenburgh was not subpœnaed as a witness, as he had relied upon the testimony of Stoutenburgh and Haven to bring home to the defendants a privity with and direction of the attachment, as well before as after the attachment proceedings were instituted. Marvin alleged that he believed, from information, that Stoutenburgh had been bribed, or otherwise induced by the defendant Frost, to leave this state, just at the time he

had been told by Marvin that he would be subpœnaed; that Frost had a store, or some kind of interest in a store, in or about Norwalk, Ohio, and that probably Stoutenburgh had been sent out there by Frost, to attend to his (Frost's) matters, until after the trial of this cause. Stoutenburgh was formerly, for a number of years, in the employ, as book-keeper, of the defendants, and been recently started in business under the actual patronage, if not with the actual credit or capital of Frost, and was a relative of Frost. The defendants, Frost & Dickerson, appeared to the declaration in this cause by Solomon G. Haven, Esq., their attorney. Afterwards B. B. Burt, Esq., was substituted in the place of Haven.

On the part of the defendants Frost & Dickerson, it was denied that the defendant Frost had any store, or interest in any store, in or about Norwalk, or elsewhere in the state of Ohio. That he (Frost) did not know when Stoutenburgh left New-York to go to Ohio, he did not send him to Ohio, nor did he go there at his request, nor did he send him there or elsewhere to avoid the service of a subpœna in this suit. Stoutenburgh attended to no matters for him while he was so absent, that Stoutenburgh was not started or continued in business under the patronage of Frost, nor with his credit or capital, nor was he, in any way, under his (Frost's) control. Frost stated his reasons for believing that plaintiffs' attorney and counsel knew that White & Lockwood were attorneys, and that they knew the letter offered in evidence, addressed to "White & Lockwood," was a communication to them as attorneys.

Stoutenburgh, in his affidavit in opposition to this motion, denied that he refused to reply to the questions of Marvin in relation to the attachment proceedings, but answered him distinctly that he had no recollection of them. That he went to Ohio at the time he did, in pursuance of his designs formed long before he knew this cause was to be tried; he [*230] did *not leave before, or return later on account of being absent at the time of the trial, and denied that he was bribed, or otherwise induced or influenced by Frost or

any other person to go to Norwalk, Ohio, as before mentioned, and that he did not attend to any matters or business for Frost while he was so absent. Defendants' attorney stated that he offered to stipulate with plaintiffs' attorney, last April or May, to have the testimony of Stoutenburgh, Grosvenor and Starr taken in the city of New-York (who were all there at that time), before a commissioner, and save the trouble and expense of their going to Buffalo, which Marvin declined to do. The defendants' counsel who tried this cause stated that the affidavit of plaintiffs' attorney, purporting to give a statement of the proceedings on the trial of this cause, was, in many respects, incorrect and erroneous, but did not make the corrections, supposing it unimportant, on motion for a new trial on the ground of surprise. Defendants' attorney stated that the attachment proceedings were claimed by the plaintiffs to be illegal, upon the ground that the affidavits upon which the same was founded did not distinctly show that the present plaintiff resided in Indiana, or that the debt on which the same issued was contracted in the state of New-York, the plaintiffs relying upon formal defects in the affidavits to sustain their action.

LE GRAND MARVIN, *plaintiffs' counsel.*
GEO. L. MARVIN, *plaintiffs' attorney.*
J. EDWARDS, *defendants' counsel.*
B. B. BURT, *defendants' attorney.*

BRONSON, Chief Justice. The plaintiffs were not nonsuited upon the principal question involved in the controversy, but for the failure to establish a subordinate fact, the retainer of Mr. Haven, about the existence of which there can be no doubt. They had, I think, exercised due diligence in preparing the cause for trial, and had good reason to believe that the evidence which they could produce would fully establish the retainer; but their evidence unexpectedly failed them on the trial, and they ask a new trial, on the ground of surprise. Although new trials are not often granted upon that ground,

I think the plaintiffs have made out a case which calls for re
lief in that form.

*Ordered,* that the motion be granted on payment of the de-
fendants' costs of the circuit and subsequent proceedings.